EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Drug/Organized Crime Section

LOUIS A. BRACCO
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd., Box 50183
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:  lou.bracco@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00033 DAE |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S SENTENCING |
| | ) | STATEMENT |
| vs. | ) | |
| | ) | |
| JOSE LOUIS LERMA-GAMBINO, | ) | |
| | ) | |
| Defendant. | ) | DATE:    March 28, 2006 |
| | ) | TIME:    1:30 p.m. |
| | ) | JUDGE:   David A. Ezra |
| | ) | |
| _____ | ) | |

GOVERNMENT'S SENTENCING STATEMENT

A.  Introduction

Defendant JOSE LOUIS LERMA-GAMBINO ("Lerma-Gambino") appears before this Court for sentencing based upon his guilty plea.  On August 1, 2005, Defendant Lerma-Gambino pled guilty to

distribution of more than 5 grams of methamphetamine (Count 2) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).

### B. Discussion

Government counsel has reviewed the draft Presentence Report prepared by U.S. Probation Officer Malie Eversole dated January 11, 2006. We agree with the factual information contained in the Presentence Report[1], as well as the determination that the applicable Criminal History Category is IV. We also agree that by reason of the application of the Special § 851 Information, a ten-year mandatory minimum term applies pursuant to 21 U.S.C. § 841(b)(1)(B).

We _disagree_, however, with the PSR's calculation of the base offense level and the total adjusted offense level. Our position is that these proposed offense levels are incorrect because the PSR erroneously includes as relevant _drug_ conduct approximately 30 pounds of "bunk" substances (see PSR ¶ 29-31). As we stipulated in paragraph 17(b) of the written plea agreement, Defendant Lerma-Gambino should be held accountable for the drug quantity underlying Count 2 of the Indictment which involved the delivery of approximately of an ounce of "ice."  We agreed in (paragraph 17(b) of) the Defendant's plea agreement _not_

---

[1] We note, however, that PSR ¶ 78 incorrectly reports that Defendant Lerma-Gambino pled guilty to Count 1 of the Indictment in return for dismissal of Count 2. Actually, the converse is correct.

to seek to aggregate as relevant drug conduct any "object amount" of methamphetamine approximate or equivalent to the amount of the "bunk" material.

The offense conduct information contained in the PSR, as well as the stipulation of the parties contained in the written plea agreement, suggests that the appropriate drug quantity for which the Defendant should be held accountable is the approximate 1 ounce (27.3 grams)[2] of methamphetamine <u>actually</u> distributed (through a "FedEx" shipment).  After this ounce "sample" of methamphetamine was distributed, Defendant Lerma-Gambino engaged in continuing negotiation over time with an undercover FBI agent, ostensibly to consummate a much larger transaction, involving about 50 or more pounds of methamphetamine.  While the precise quantity of methamphetamine and price changed many times during the negotiations, the evidence showed that, ultimately, Lerma-Gambino actually delivered approximately 30 pounds of "bunk" to the undercover agent(s), in a bold attempt to "rip off" thousands of dollars of cash.

The Court must now resolve whether Defendant Lerma-Gambino should be held accountable for any amount of the

---

[2]     The Honolulu Police Department lab report (and the stipulation in the plea agreement) indicate that the net weight of the substance received was 27.3 grams.  The "dry weight" upon laboratory analysis was 26.811 grams at a purity of 97%, which results in 26.006 grams of "actual" methamphetamine.

"bunk" he delivered to the agents, as relevant <u>drug</u> conduct.  Our view is that Defendant Lerma-Gambino cannot be held accountable for any (or all) of the "bunk" material as relevant conduct <u>unless</u> -- at the time of the offense -- Lerma-Gambino had a realistic capability to obtain some or all of the actual drugs he promised.  In other words, Defendant Lerma-Gambino may not be held accountable for a large drug quantity based on mere "puffing."[3]

In examining Lerma-Gambino's background and apparent capability to obtain (large quantities of) methamphetamine in the circumstances underlying this case, it does not appear that sufficient evidence is available to prove that Defendant Lerma-Gambino had the capacity (at the time of the offense) to provide pound quantities of methamphetamine, as he claimed during the negotiations with the undercover agent.  Although Lerma-Gambino may well have aspired to traffic in multi-pound quantities of methamphetamine, there appears to be no available information which suggests he could actually do so.  Indeed, Lerma-Gambino's 2000 conviction for methamphetamine distribution

---

[3]  See Application Note 12 to guideline § 2D1.1., which provides. . .  "If, however, the defendant establishes that the defendant did not intend to provide or purchase, or was not reasonably capable of providing or purchasing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that the defendant did not intend to provide or purchase or was not reasonably capable of providing or purchasing."

shows a similar history.  In that case, Lerma-Gambino was able only to produce ounce quantities of methamphetamine.  Although he negotiated for pound quantities of methamphetamine in the 2000 case, a "rip off," similar to the instant case, was apparently planned.

For the reasons stated above, we believe that the interests of justice would be best served by holding the Defendant accountable for the methamphetamine he actually distributed, <u>under the enhanced penalties which apply by reason of his prior drug conviction(s)</u>.[4]  Holding the Defendant accountable for 27.3 grams of "ice" would result in a base offense level of Level 28.  Assuming the present adjustments applied by the PSR remain the same, the total offense level would be Level 27 (Criminal History Category IV), which yields an advisory guideline sentencing range of 100-125 months.  However, the ten-year mandatory minimum which applies would yield a guideline range of 120-125 months.

Moreover, the Sentencing Guidelines are merely advisory.  The Court could choose to consider the Defendant's apparent *modus operandi* of planned drug "rip off" conduct (i.e.-creating risk of violence) in lieu of aggregating "bunk"

---

[4]  Prior to receiving the PSR, the U.S. Attorney was aware of only Defendant's 2000 prior drug felony conviction, which is noticed in the § 851 Special Information.  It now appears that Defendant was also previously convicted of a felony drug trafficking offense in Arizona in 1972 (see PSR ¶ 50).

materials, in determining sentence.  In any case, the Court would be able impose an appropriate sentence based upon Defendant Lerma-Gambino's <u>real</u> offense conduct, without holding the Defendant accountable for the "bunk" materials as relevant conduct.

      C.    Motion for One-Level "Super Acceptance" Credit Pursuant to Guideline § 3E1.1(b)(2)

The United States Attorney acknowledges that the Defendant's agreement to plead guilty and entry of guilty plea were noticed in a timely manner, so as to permit the Government to avoid preparing for trial as to Defendant. Accordingly, we herein move for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), as the Defendant appears eligible for this benefit.  PSR ¶38 has already credited the Defendant with this one-level reduction.

DATED: January 19, 2006, at Honolulu, Hawaii.

                  Respectfully submitted,

                  EDWARD H. KUBO, JR.
                  United States Attorney
                  District of Hawaii

                  By <u>/s/ Louis A. Bracco</u>
                      LOUIS A. BRACCO
                      Assistant U.S. Attorney

                  Attorneys for Plaintiff
                  UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

      I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served Electronically through CM/ECF:

SHANLYN A.S. PARK, ESQ.  shanlyn_park@fd.org     January 19, 2006
Attorney for Defendant
JOSE LOUIS LERMA-GAMBINO


Served by Hand-Delivery:

Malia Eversole                              January 19, 2006
Probation Office
U.S. Courthouse, Room C-110
300 Ala Moana Boulevard
Honolulu, HI  96850


      DATED: January 19, 2006, at Honolulu, Hawaii.


                                /s/ Shelli Ann H. Mizukami